UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAISY REYES,                                   :   Case No.: 1:17-cv-01003-KAM-VMS
                                               :
                          Plaintiff,           :
                                               :
        -against.                              :
                                               :
CROTHALL HEALTHCARE, INC.                      :
                                               :
                          Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANT CROTHALL HEALTHCARE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


William E. Vita, Esq.
WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
(516) 662-9200
(516) 662-9212 fax
wvita@westermanllp.com
*Attorneys for Crothall Healthcare, Inc.*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...........................................................................1

II.    LEGAL STANDARD.........................................................................................2

III.   ARGUMENT......................................................................................................3

      A.    Claims Arising From The Negligence Of Plaintiff's Co-Worker Are Barred By The Exclusivity Provision Of New York's Workers' Compensation Law And Cannot Be Imputed To Crothall...........................3

      B.    Crothall did not owe Plaintiff an independent tort duty that CAN support her negligence claim, and none of the *Espinal* exceptions applies. .................................................................................................8

            1.    Crothall did not launch a force or instrument of harm that led to Plaintiff's fall. .............................................................10

            2.    Plaintiff did not detrimentally rely on Crothall's contractual duties at Elmhurst Hospital............................................17

            3.    Crothall did not entirely displace HHC or wholly absorb HHC's responsibility to maintain its premises in a safe manner.............................................................................18

IV.    CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................................................2

*Castro v. County of Nassau,* 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) ......................2

*Collado v. Crothall Healthcare Inc.,* No. 17-CV-3078 (KBF), 2017 WL 6502230
    (S.D.N.Y. Dec. 15, 2017) ......................................................................... passim

*Doona v. OneSource Holdings, Inc.,* 680 F. Supp. 2d 394 (E.D.N.Y. 2010) ........................ passim

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ...............................................7

*Forjan v. Leprino Foods, Inc.,* 209 F. App'x 8 (2d Cir. 2006) ...........................................4, 13, 15

*Isabella v. Koubek*, 733 F.3d 384 (2d Cir. 2013) ..............................................................4

*Mraz v. JP Morgan Chase Bank*, No. 17-CV-6380, 2018 WL 2075427 (E.D.N.Y.
    May 3, 2018) ..............................................................................................7

*Newton v. City of N.Y.*, 681 F. Supp. 2d 473 (S.D.N.Y. 2010) ........................................7

*O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478 (S.D.N.Y. 2005) .........................18


**STATE CASES**

*Braxton v. Mendelson*, 135 N.E. 198 (NY 1922) ............................................... 12-13, 15

*Church v. Callanan Indus.*, 99 N.Y.2d 104, 782 N.E.2d 50 (2002) ...............................10

*Cook v. Buffalo Gen. Hosp.,* 308 N.Y. 480, 127 N.E.2d 66 (1955) .................................4

*Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 773 N.E.2d 485 (N.Y.
    2002) ........................................................................................................ passim

*Fialkow v. Mt. Sinai Hospital and Crothall Healthcare, Inc.*, No. 162264/2014,
    Order dated May 14, 2018 at 3-6 (N.Y. Sup. Ct. May 14, 2018) ..........................17

*Hagen v. Gilman Mgmt. Corp.*, 4 A.D.3d 330, 770 N.Y.S. 2d 890 (2d Dep't 2004) ....................18

*Isabella v. Hallock*, 22 N.Y.3d 788, 10 N.E.3d 673 (2014) .......................................3, 5

*Karudman v. Newsday, Inc.*, 416 N.E.2d 557 (N.Y. 1980) ..............................................6

*Kenny v. Bacolo,* 61 N.Y.2d 642, 472 N.Y.S.2d 78, 460 N.E.2d 219 (1983) .................................6

*Oumentseva v. Crothall Facilities Management, Inc.*, No. 105816/2009, 2013 WL 2155582 (N.Y. Sup. Ct. May 13, 2013)................................................................................11

*Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 634 N.E.2d 189 (1994)...........................................................................................................................18

*Pereira v. St. Joseph's Cemetery*, 54 A.D.3d 835, 864 N.Y.S.2d 491 (2nd Dept. 2008) ...................................................................................................................... 6-7

*Perkins v. Crothall Healthcare, Inc.,* 148 A.D.3d 1189 (N.Y. 2d Dep't 2017)............. 9, 12-14, 20

*Roberts v. Gagnon*, 1 A.D.2d 297, 149 N.Y.S.2d 743 (3d Dep't 1956).........................................6

*Schmidt v. Promaster Cleaning Service*, 281 A.D.2d 468, 721 N.Y.S.2d 680, 2001 N.Y. Slip Op. 02084 (2nd Dep't 2001) ...................................................................................18

*Sookram v. City of New York and Crothall Healthcare*, No. 11006/2015 (N.Y. Sup. Ct. 2017) ..................................................................................................... 14, 16-17

*Spencer v. Crothall Healthcare, Inc.,* 38 A.D.3d 527, 834 N.Y.S.2d 194 (N.Y. 2d Dep't 2007) ...........................................................................................................4, 11, 13

*Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 585 N.E.2d 355 (1991)............. Passim

## I.    **PRELIMINARY STATEMENT**

Plaintiff Daisy Reyes ("Plaintiff") alleges that she was injured after slipping and falling on a wet floor hazard created by her co-worker.[1] [SOF at ¶ 1]. She applied for and received workers' compensation benefits. Plaintiff now sues Defendant Crothall Healthcare, Inc. ("Crothall") attempting to recover again for the same negligent acts or omissions of her co-worker. [SOF at ¶¶ 5-6]. Because her claims must fail, Crothall is entitled to judgment as a matter of law.

At the time of the accident, New York City Health and Hospitals Corporation ("HHC") contracted with Crothall to provide limited housekeeping management services at several facilities, including Elmhurst Hospital Center. [SOF at ¶¶ 9-10]. Under that contract, Crothall provided five or six managers to help HHC manage and train HHC-employed housekeepers at Elmhurst. [SOF at ¶ 23]. In addition to providing all housekeepers, HHC also provided HHC-employed supervisors to assist Crothall in managing the large housekeeping staff. [SOF at ¶ 22] Notably, Crothall did not perform any actual housekeeping tasks at Elmhurst. [SOF at ¶ 23-25].

Plaintiff's single count of negligence fails for two separately dispositive reasons. First, for injuries arising from the negligence of a co-worker, New York's Workers' Compensation Law provides her exclusive remedy. Second, Crothall is neither the property owner nor a lessee at Elmhurst and, thus, Crothall does not owe a common law duty with regard to the safety of HHC's premises. Although Crothall owed certain contractual duties to HHC for specific management services, New York courts have long held that such contractual duties (even if breached) generally do not give rise to a tort duty or liability to additional parties. In *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 142, 773 N.E.2d 485, 48 (N.Y. 2002), the Court of Appeals of

---

[1]  Defendant's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment is cited as "SOF" going forward.

New York established three narrow exceptions to this general rule,[2] and none of these exceptions applies in this case.  Absent an *Espinal* exception, Crothall's contractual duties owed to HHC did not give rise to a tort duty or duty of care owed to Plaintiff that could support her negligence claim. For these reasons, and those that follow, Crothall is entitled to judgment as a matter of law.

## II.      <u>LEGAL STANDARD</u>

Summary judgment is warranted, "if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the defendants as a matter of law." *Doona v. OneSource Holdings, Inc.,* 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor.  *Id.* at 322-23. A "material fact" is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Once the moving party meets its burden by making a prima facie showing that there are no genuine issues of material fact, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248. A non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *See Castro v. County of Nassau,* 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010). The non-moving party may not rely merely on conclusory allegations or denials, but

---

[2] Under *Espinal,* the three exceptions to the general rule are: (1) "where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launches a force or instrument of harm'; (2) where plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Espinal*, 773 N.E.2d at 488.

must set forth "concrete particulars" that show that a trial is necessary. *Id.* "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Collado v. Crothall Healthcare Inc.,* No. 17-CV-3078 (KBF), 2017 WL 6502230, at 2 (S.D.N.Y. Dec. 15, 2017).

## III.   <u>ARGUMENT</u>

### A.   CLAIMS ARISING FROM THE NEGLIGENCE OF PLAINTIFF'S CO-WORKER ARE BARRED BY THE EXCLUSIVITY PROVISION OF NEW YORK'S WORKERS' COMPENSATION LAW AND CANNOT BE IMPUTED TO CROTHALL.

It is undisputed that Plaintiff and all uniformed housekeepers at Elmhurst were HHC employees at the time of Plaintiff's accident. [SOF at ¶ 21].[3]  Plaintiff obviously could not sue her co-worker or HHC for her injuries because both enjoy immunity under New York's Workers' Compensation Law, under which Plaintiff sought and received benefits arising from this accident.

Section 29(6) of the Workers' Compensation Law provides in pertinent part:

> The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ . . . .  The limitation of liability of an employer set forth in section eleven of this article for the injury or death of an employee shall be applicable to another in the same employ.

*See Isabella v. Hallock*, 22 N.Y.3d 788, 792-793, 10 N.E.3d 673, 674-675 (2014) ("Read together, these statutes render workers' compensation benefits the exclusive remedy of an injured employee, thereby barring the employee from recovering against a negligent coemployee or employer.").

Regardless of any special employment considerations (discussed in Section B below), HCC remained the general employer of its housekeepers, who at all times worked at HHC's facility;

---

[3] Crothall personnel did not wear HHC housekeeping uniforms nor did they mop floors at Elmhurst.
 [SOF at ¶ 21].

cleaned HHC's premises for the continuing benefit of HHC; wore HHC's uniforms; had their employment and pay determined by HHC pursuant to a collective bargaining agreement; and were partially or entirely supervised by other HHC personnel during their shifts.[4]  New York courts have long held that general employment and special employment are not mutually exclusive.  *See Cook v. Buffalo Gen. Hosp.,* 308 N.Y. 480, 483, 127 N.E.2d 66, 67 (1955) ("In Workmen's Compensation Law, as at common law, 'The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself.'"); *see also Spencer v. Crothall Healthcare, Inc.,* 38 A.D.3d 527, 528, 834 N.Y.S.2d 194, 196 (N.Y. 2d Dep't 2007) (In considering nearly identical facts as those presented here, the Second Department held, "[a] general employee of one employer may also be a special employee of another employer....since the members of the housekeeping staff are general employees of the hospital, the plaintiff is precluded by the exclusivity provision of the Worker's Compensation Law from bringing this suit against [Crothall]."); *Forjan v. Leprino Foods, Inc.,* 209 F. App'x 8, 10 (2d Cir. 2006) ("A general employee of one employer may also be in the special employ of another.").

Because the negligent housekeeper and Plaintiff were undeniably co-workers (both in the same general employ of HHC), Plaintiff's exclusive remedy arising from her co-worker's negligence is the workers' compensation benefits Plaintiff sought and received. And workers' compensation exclusivity does not just bar Plaintiff from suing her negligent co-worker and their employer, it also bars other derivative actions arising only from the negligence of the same co-worker.  In *Isabella v. Koubek*, 733 F.3d 384 (2d Cir. 2013), the plaintiff was injured in an

---

[4] It is uncontested in this case that Crothall managers and HHC housekeeping supervisors *both* supervised the work of HHC's housekeepers during some shifts and that *only* HHC housekeeping supervisors supervised the work during overnight and weekend shifts. [SOF at ¶¶ 23-25].

automobile accident while in the course and scope of his employment.  He and his wife could not sue the driver of the vehicle in which he was a passenger because she was his co-worker and was immune due to workers' compensation exclusivity.  *Id.* at 388. So, the injured plaintiff and his wife sued the driver of the other vehicle, who in turn brought a contribution claim against the owner of the vehicle driven by plaintiff's co-worker.  The contribution claim was derivative and based entirely on the negligence of the immune driver, the plaintiff's co-worker.  *Id.* at 387.

The Second Circuit, perceiving a conflict in state court case precedent on the issue of whether the exclusive remedy of workers' compensation for co-worker negligence *also* precluded derivative claims against a third-party who was not a co-worker or employer of plaintiff, certified the question to the Court of Appeals of New York.  The Court of Appeals answered that the New York State Legislature expressly intended workers' compensation benefits to be the *exclusive remedy* for employees injured by the negligence of a co-worker and that both direct and derivative claims arising from that negligence are barred.  *Isabella*, 22 N.Y.3d at 96 ("In sum, we hold that a defendant may not pursue a third-party contribution claim under Vehicle and Traffic Law § 388 against a vehicle owner where the driver's negligence was a cause of the plaintiff's injuries, but the driver is insulated from a lawsuit under Workers' Compensation Law § 29 (6).").

In reaching this decision, the *Isabella* court relied upon and reiterated the continued validity of prior decisions based on nearly identical facts and reaching nearly the identical results.  *Id.* at 794-95 (citing *Rauch v Jones*, 4 N.Y.2d 592, 596 152 N.E.2d 63 (1958) ("The [Workers' Compensation Law exclusivity] statute, having deprived the injured employee of a right to maintain an action against a negligent coemployee, *bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided*.") (emphasis added); *Naso v Lafata*, 4 N.Y.2d 585, 591, 152 N.E.2d 59 (1958) (reaching same

conclusion as the *Rauch* court)); *see also Kenny v. Bacolo,* 61 N.Y.2d 642, 472 N.Y.S.2d 78, 460

N.E.2d 219 (1983) ("Inasmuch as the driver, Bacolo, is statutorily immune from suit, there can be

no liability imputed to Decker Tank and no action can be sustained against it.").

The *Rauch* and *Naso* opinions from New York's highest court both cite the Third

Department's decision in *Roberts v. Gagnon*, 1 A.D.2d 297, 149 N.Y.S.2d 743 (3d Dep't 1956).

In *Roberts*, the plaintiff sustained injuries at work due to the negligence of his co-worker.  *Id.* at

298.  In affirming the trial court's dismissal of the plaintiff's complaint on grounds of workers'

compensation exclusivity, the Third Department reiterated the true effect of Section 29(6):

> Here a law declares that workmen's compensation "shall be the exclusive remedy
> to an employee * * * when such employee is injured * * * by the negligence or
> wrong of another in the same employ."  [quoting N.Y. Workers' Comp. Law §
> 29(6)].  The section makes one and only one remedy available to an employee
> injured in the course of his employment by a fellow worker—namely, workmen's
> compensation.  Consequently, no common-law action is permitted whether such
> action be directed against a negligent co-employee or his principal.  A complete
> disability to sue has been placed upon an employee when he has been injured by a
> coemployee.

*Id*. at 301; *see also Rauch*, 4 N.Y.2d at 596 ("The unmistakable intention of the Legislature to

make only one remedy available to an employee injured in the course of his employment by a

fellow employee is manifested by the use of the emphatic language 'exclusive remedy'.").

New York state and federal courts have further applied this principal in barring other

derivative actions.  For example, in *Pereira v. St. Joseph's Cemetery*, 54 A.D.3d 835, 837, 864

N.Y.S.2d 491 (2nd Dept. 2008), the Second Department found that the exclusive remedy provision

of the Workers' Compensation Law barred negligence claims against an employer for co-worker

negligence and therefore *also* barred vicarious liability claims against the underlying property

owners.  *Id.* ("[A] claim of vicarious liability cannot stand when 'there is no primary liability upon

which such a claim of vicarious liability might rest.'"); *see also Karudman v. Newsday, Inc.*, 416

N.E.2d 557, 564 (N.Y. 1980) (After entering summary judgment for individual reporters in a

- 6 -

Newsday defamation suit, the court further ruled: "It follows that the suit against Newsday cannot be maintained solely on the theory that it is vicariously liable, since there is no primary liability upon which such a claim of vicarious liability might rest.").

The *Pereira* decision was recently cited by the United State District Court for the Eastern District of New York (Judge Glass) in *Mraz v. JP Morgan Chase Bank*, No. 17-CV-6380, 2018 WL 2075427, at *7 (E.D.N.Y. May 3, 2018). There, the court held that the plaintiffs could not maintain negligence, breach of fiduciary duty, or tortious interference claims against the individual defendants/bank employees (on various grounds). The court then went on to rule that, "[f]or all three claims, Plaintiffs' theory of JPMS's liability is one of *respondeat superior*, with Plaintiffs purporting to hold JPMS vicariously liable for the torts of the Individual Defendants; ... '*[a] claim of vicarious liability cannot stand when 'there is no primary liability upon which such a claim of vicarious liability might rest.'* Because Plaintiffs cannot state a cause of action against the Individual Defendants . . . neither can they state a cause of action against JPMS under a theory of *respondeat superior*." *Id.* (internal citations to *Pereira* and *Karduman* omitted).

In present case, to the extent Plaintiff is attempting to hold Crothall vicariously liable for the alleged negligence of her co-worker, that claim fails as a matter of law.[5] Plaintiff is expressly

---

[5] To the extent that a claim of negligent supervision or negligent retention could be considered a separate claim not subject to this same workers' compensation preclusion, such a claim would not be viable under New York law under the undisputed facts of this case. Under New York law, a negligent supervision claim requires showing: (1) the defendant employed the tortfeasor; (2) the defendant "knew or should have known" of the tortfeasor's propensity "for the conduct which caused the injury" before the tortious conduct occurred; and (3) the tortious conduct occurred on the "employer's premises" or with the employer's property. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted). In addition, a negligent supervision claim "can only proceed against an employer for an employee acting outside the scope of her employment." *Newton v. City of N.Y.*, 681 F. Supp. 2d 473, 487-88 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). In this case, Plaintiff cannot identify the housekeeper who was preparing to mop the floor. [SOF at ¶ 2]. That fact alone is fatal to any negligent supervision or training claim. The housekeeper was not employed

- 7 -

barred from bringing any direct or derivative claim arising from her co-worker's negligence because she chose workers' compensation benefits as her exclusive remedy.

**B. CROTHALL DID NOT OWE PLAINTIFF AN INDEPENDENT TORT DUTY THAT CAN SUPPORT HER NEGLIGENCE CLAIM, AND NONE OF THE *ESPINAL* EXCEPTIONS APPLIES.**

Crothall did not own or lease any portion of Elmhurst. [SOF at ¶¶ 8-9]. Rather, HHC owned and operated the premises at all times.[6] Not only does HHC operate the hospital, it also provides maintenance and security, controls the hours of operation, controls access to the property, and employs nearly all hospital personnel. [SOF at ¶¶ 34-35]. Crothall, on the other hand, provided five or six managers to help train and manage HHC's very large housekeeping staff.[7] [SOF at ¶¶ 7, 8-14]. Crothall did not contract to perform housekeeping services, like mopping floors, and the undisputed facts demonstrate that Crothall did not, in fact, perform any actual housekeeping services. The Crothall managers wore suits and business attire at all times, whereas HHC's unionized housekeeping staff wore HHC uniforms while on the clock. [SOF at ¶ 21].

It is also significant to note that Crothall did not exclusively manage the housekeeping, HHC was involved as well. [SOF at ¶¶ 9, 23-25, 33-38]. Depending on the shift, Crothall had one to four managers working at Elmhurst (except overnight and weekend shifts, when no Crothall personnel were onsite). [SOF at ¶ 23-25]. But because Elmhurst is such a large facility, and

---

by Crothall (and Crothall did not control his the terms of their employment); there is no evidence of any prior knowledge of a propensity regarding this conduct; there is no evidence supporting a contention that the premises or chattels "belonged" were in possession or control of Crothall as opposed to HHC; and finally, there is absolutely no dispute that the housekeeper was acting within the scope of his employment while mopping the floor at Elmhurst. [SOF at ¶¶ 13, 16-20]. Under New York law *all* of these factors are necessary, and the record in this case supports *none* of them.

[6] Technically, the City of New York owns the property but leases it in total to HHC to operate.

[7] Testimony varied on the estimated number of HHC housekeepers employed at the time of the accident, from 65 to 153. The varying estimates are believed to represent different shift averages versus total number of housekeepers.

because HHC employed such a large number of housekeepers, the Crothall managers shared supervisory responsibility and duties with HHC-employed housekeeping supervisors, and HHC housekeeping supervisors were also working at the time of Plaintiff's accident. [SOF at ¶¶ 24].[8]

Even when a contractual duty is owed, under New York law "the breach of a contractual obligation to render services does not generally give rise to tort liability in favor of a non-contracting third-party." *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 402 (E.D.N.Y. 2010) (citing *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138-39, 773 N.E.2d 485 (2002)). Indeed, contract promises between two parties rarely create tort duties to additional parties, and breach of contract promises ordinarily expose the promisor only to a breach of contract action. *Id*. "This principle extends to contractual obligations to maintain and inspect building premises." *Doona*, 680 F. Supp. 2d at 402-03.

Plaintiff's claim against Crothall here is far from novel, and New York state and federal courts have previously addressed the same legal issue presented here, in cases involving the exact same HHC contract with Crothall and Crothall's limited management services at HHC-owned and operated hospitals. And those courts have gone on to enter summary judgement in favor of Crothall, finding no *Espinal* exception applied. *See Perkins v. Crothall Healthcare, Inc.,* 148 A.D.3d 1189, 1191 (N.Y. 2d Dep't 2017); *Collado v. Crothall Healthcare Inc.,* No. 17-CV-3078 (KBF), 2017 WL 6502230, at *4 (S.D.N.Y. Dec. 15, 2017).

The Court of Appeals in *Espinal* began its analysis with the general rule that contractual obligations do not give rise to tort duties:

---

[8] Indeed, it is uncontested in this case that Crothall did not provide management services to the exclusion of HHC; HHC had its own housekeeping supervisors on duty at Elmhurst, supervising housekeeping work during all shifts and stated in its Contract that "the services to be performed by [Crothall] shall be at all times subject to the direction and control of [HHC]." [SOF at ¶¶ 9, 24].

> Under our decisional law a contract obligation, standing alone, will generally not give rise to tort liability in favor of a third party. Seventy-four years ago, Chief Judge Cardozo stated that imposing liability under such circumstances could render the contracting parties liable in tort to "an indefinite number of potential beneficiaries." As a matter of policy we have generally declined to impose liability to that degree. 98 N.Y.2d at 486.

The Court of Appeals went on to recognize three narrow exceptions: (1) "where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launches a force or instrument of harm'; (2) where plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Id.* at 488. None of the exceptions applies in this case.

### 1.   Crothall did not launch a force or instrument of harm that led to Plaintiff's fall.

#### a. Crothall personnel did not create the wet floor condition

New York has uniformly interpreted "launching of force or instrument of harm" as requiring that the contractor create or exacerbate a dangerous condition. *Doona*, 680 F. Supp. 2d at 403; *Espinal*, 98 N.Y.2d at 141-42; *Church v. Callanan Indus.*, 99 N.Y.2d 104, 111-12, 782 N.E.2d 50 (2002). The record is uncontested that Crothall managers did not perform actual mopping work at Elmhurst. And the very fact that Plaintiff cannot even identify the person who was mopping before her fall forecloses the issue. Because Crothall neither created nor exacerbated the wet floor condition, it did not directly launch a force or instrument of harm.

#### b. Crothall cannot be held vicariously liable for the negligence of an HHC general employee.

The only way that Plaintiff can hold Crothall vicariously liable for creating the wet floor condition is by proving that the housekeeper in question was *exclusively* an employee or agent of Crothall at the time of the accident. Stated differently, if that housekeeper remained a general

employee of HHC—regardless if he was *also* a special employee of Crothall—then Plaintiff's claim is absolutely barred as discussed in Section A above. She simply cannot bring a claim against her immune HHC co-worker, and no derivative liability can be imputed from the negligence of that immune co-worker.

Other plaintiffs have attempted to hold Crothall vicariously liable as a special employer for the negligence of a tortfeasor who nonetheless remained the plaintiff's general co-worker. *See, e.g., Spencer*, 38 A.D.3d at 527 ("[S]ince the members of the housekeeping staff are general employees of the hospital, the plaintiff is precluded by the exclusivity provision of the Worker's Compensation Law from bringing this suit against [Crothall]."). *Oumentseva v. Crothall Facilities Management, Inc.*, No. 105816/2009, 2013 WL 2155582 (N.Y. Sup. Ct. May 13, 2013) provides a textbook example. In facts similar to those presented here, the plaintiff, a nurse, fell on a floor made wet by her hospital co-workers, housekeepers Williams and Wallace. Crothall managed those housekeepers under a contract. The court originally denied Crothall's motion for summary judgment, but changed its mind and granted summary judgment on a motion for reconsideration. The court explained:

> In the September 6, 2012 decision, I held that there are questions of fact as to whether Wallace and Williams are Crothall's special employees. However, upon review of the law and facts at issue, I find that the more pertinent question, which was overlooked in the September 6, 2012 decision, is whether Wallace and Williams remained general employees of Isabella, because if they did – regardless of whether there were also Crothall's special employees – plaintiff is bound by the exclusivity provision of the Workers Compensation Law.

*Id.* at *14. Relying in part on *Spencer*, the court found that the hospital did not surrender control of its general employees, as it paid their wages, provided benefits and made the final decision to hire, discipline and fire them. Thus, the derivative claim against Crothall was barred. *Id.*

Returning to the facts here and setting aside the question of special employment, the undisputed material facts demonstrate that all housekeepers working at Elmhurst on the day of Plaintiff's accident were HHC general employees. HHC hired all housekeepers, was a party to the collective bargaining agreement covering all HHC housekeepers, and retained the exclusive authority to fire all housekeepers. [SOF at ¶ 13]. HHC paid all of their salaries and provided all benefits. [SOF at ¶ 13]. Plaintiff simply cannot come forward with any evidence to show that the unidentified housekeeper was *not* a general employee of HHC. As such, any derivative claim against Crothall based on the negligence of an HHC general employee (co-worker of Plaintiff) is barred as a matter of law.

### c. Crothall was not the special employer of the unidentified HHC housekeeper.

Even if Crothall could somehow be held vicariously liable as a special employer for the negligence of the unidentified-but-immune HHC housekeeper—which it cannot be—the undisputed facts demonstrate that no such special employment arrangement existed. In previous cases, plaintiffs have certainly argued that HHC's housekeepers should be deemed Crothall's special employees. In two recent HHC-Crothall cases, however, the courts disagreed and entered summary judgment for Crothall. *See Perkins,* 148 A.D.3d at 1191; *Collado,* 2017 WL 6502230, at *4.

Although the doctrine of special employment has been recognized in New York for many decades (*see, e.g., Braxton v. Mendelson*, 135 N.E. 198 (NY 1922)), the case most often cited on the topic of special employment is *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557, 585 N.E.2d 355 (1991). In *Thompson*, the Court of Appeals of New York considered whether the plaintiff Thompson, a general employee of ATS, was also a special employee of Grumman, such that Thompson's claims against Grumman would also be barred under workers' compensation law

- 12 -

following an injury suffered by Thompson at Grumman's facility.[9]  The Court of Appeals began with the foundational principle that general employment is presumed to continue exclusively, and that presumption can only be "overcome upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer." *Id.* at 557.  To determine whether the presumption is overcome in the facts presented there, the Court noted:

> Many factors are weighed in deciding whether a special employment relationship exists, and generally no one is decisive (*Braxton v Mendelson*, 233 NY 122, *supra*, at 124). While not determinative, a significant and weighty feature has emerged that focuses on who controls and directs the manner, details and ultimate result of the employee's work.

*Id.* at 557.  Although special employment status is usually a question of fact, there is no per se rule that a question of fact always exists, and many courts have granted summary judgment on this issue. *Id.* at 557; *see also Collado, Forjan, Perkins* and *Spencer.*  Specific to *Thompson*, the Court considered various factors, including the facts that Thompson was assigned exclusively at Grumman's facility (every day), that Grumman controlled the length and terms of Thompson's employment, that Grumman provided *all* oversight of Thompson's work and that—with no ATS personnel onsite at Grumman—"[i]n  no respect could it be said that ATS itself was performing Grumman's work or had any direct control, knowledge or expertise with respect to the labor Thompson was performing for Grumman." *Id.* at 555.

Again, New York courts have previously addressed whether Crothall, under the same contract at issue here, became the special employer of HHC's housekeeping staff.  The court in

---

[9] Grumman, like most parties attempting to invoke special employment, invoked the doctrine defensively – to bring the claim within the broad scope of the Workers Compensation Law and expand immunity to Grumman as a special employer.  In contrast, Plaintiff here, if she were to attempt to invoke special employment, would do so offensively as a means of restricting the scope of workers compensation and allow the double recovery for a single act of co-worker negligence.

*Collado* examined the *Thompson* factors and concluded that the plaintiff did not demonstrate the necessary surrender of control by HHC over its housekeeping staff. *Collado*, 2017 WL 6502230, at \*4. Although Crothall clearly provided some supervision over the HHC housekeepers, the court found that the negligent housekeeper "was employed by, paid by, hired by, and supervised by HHC personnel." *Id.* The kind of surrender of control required by *Thompson* was simply lacking. *Id.*

Similarly, in *Perkins v. Crothall*, the very specific issue of whether HHC's housekeepers were special employees of Crothall (under the same HHC Contract at issue in this case) was specifically addressed, and the Second Department, in entering summary judgment in favor of Crothall, found as a matter of law that Crothall was not the special employer of HHC's housekeepers. 148 A.D.3d at1191 ("HHC did not surrender control of its housekeeping staff, including the housekeeping supervisor involved in this incident, as it, inter alia, paid the staff's wages and had the final decision-making power to hire, discipline, or fire any of its members . . . . Consequently, [Crothall] established that it was not vicariously liable, as a special employer, for the actions of the housekeeping supervisor." *Id.* (internal citation omitted)).

This same issue was again recently addressed, this time in the Supreme Court of New York in Queens, in the matter of *Sookram v. City of New York and Crothall Healthcare*, No. 11006/2015 (N.Y. Sup. Ct. 2017). There, the court entered summary judgment for Crothall, concluding as a matter of law that Crothall was not the special employer of HHC's housekeepers at Queens Hospital Center. *Sookram*, No. 11006/2015, Order dated Nov. 8, 2017 at 8-9 (N.Y. Sup. Ct. Nov. 8, 2017). In short, because HHC provided the wages, insurance and benefits to the housekeepers and alone retained the power to hire, fire and discipline them, there was no surrender of control by HHC of the housekeepers. *Id.*

- 14 -

Turning to the relevant special employment factors here, it is important to note the ultimate objective of the analysis. In choosing the factors to apply, the *Thompson* court specifically cited to *Braxton v. Mendelson*, which provided the following backdrop to the special employment analysis:

> Ordinarily no one fact is decisive. The payment of wages; the right to hire or discharge; the right to direct the servant where to go, and what to do; the custody or ownership of the tools and appliances he may use in his work; the business in which the master is engaged or that of him said to be a special employer; none of these things give us an infallible test. At times any or all of them may be considered. The question remains: *In whose business was the servant engaged at the time*?

*Braxton v. Mendelson*, 233 N.Y. 122, 124, 135 N.E. 198, 198 (1922) (emphasis added). Like the facts in *Collado*, the HHC housekeepers in this case worked exclusively at HCC's premises, cleaning HHC's property, pursuant to policies and procures of HHC, per its Contract with HHC. [SOF at ¶¶ 9-13]. Although Crothall provided limited management services for the housekeeping operation, HHC shared that management role by providing HHC-employed housekeeping supervisors who independently supervised the hospital's housekeeping staff. [SOF at ¶¶ 23-25]. Moreover, HHC paid the salaries and provided the benefits to its housekeepers. [SOF at ¶¶ 12-13]. And HHC retained the authority to hire, fire, and formally discipline its housekeepers under the terms of a separate collective bargaining agreement to which Crothall was not a party. [SOF at ¶ 12-13]. HHC also retained control over the Crothall managers at Elmhurst and could have any Crothall personnel removed from the premises. [SOF at ¶ 14]. Did HHC surrender control over its housekeeping staff such that Crothall could qualify as a special employer under *Thompson*? Of course not.[10]

---

[10] The only factor identified by the Second Circuit in *Forjan* that does not squarely go against finding special employment in this case is "furnishing equipment." Under the HHC Contract, HHC's previous housekeeping equipment continued to be used, and Crothall would purchase new housekeeping equipment as needed and approved by HHC. The new equipment

In *Thompson*, it was relatively straightforwad that the work being performed by Thompson was Grumman's work. The court highlighted the fact that ATS had no presence at the Grumman facility and had no "control, knowledge or expertise" with respect to the work Thompson was performing for Grumman. *Thompson*, 78 N.Y.2d at 559. The Court of Appeals so held even though ATS made a profit from providing workers like Thompson to Grumman.

In stark contrast to ATS' complete absence at Grumman, HHC's presence at Elmhurst was constant, overwhelming and nearly complete. All housekeeping work performed at Elmhurst was HHC's work, performed for the clearly exclusive and ongoing benefit of HHC. HHC hired and employed the entire housekeeping staff and provided its own housekeeping supervisors. If HHC evicted the handful of Crothall contract managers tomorrow, HHC has more than sufficient "control, knowledge and expertise" over its housekeeping function to continue such operations with little or no disruption. The very suggestion that the large-scale housekeeping operation at Elmhurst was really Crothall's business, and not HHC's, belies common sense and flies in the face of *Thompson.*

In *Sookram v Crothall Healthcare, Inc.*, discussed supra, the trial court addressed the same issue and ruled that the housekeeping work being performed was ultimately HHC's work, not Crothall's:

> In our case, no special employment relationship was created between Queens Hospital Center's housekeeping staff and Crothall, for the simple reason that they did not perform any work or services for Crothall but only performed work for their

---

could be paid for by a set amount of money initially allocated by HHC or Crothall up to set amounts, by Crothall and then reimbursed by HHC up to a certain amount, or not reimbursed if the total equipment costs had already exceed a set amount for that year.

"Ownership" of the new equipment depends upon the circumstances in which it is acquired, and there is no way of knowing how any specific equipment involved in the underlying incident was acquired. Therefore, it is difficult, if not impossible, to say how the "furnishing equipment" factor is to be applied, as the parties shared equipment, each owned some equipment, and shared financial responsibility for acquiring new equipment.

employer HHC, that hired and paid their salaries.  They did not go to Crothall's place of business and clean Crothall's floors. Crothall was merely an outside company hired by HHC to supervise HHC's housekeeping staff in their work at the hospital.  It is Crothall employees who were rendering services to HHC, in their management of HHC's housekeeping staff, not the other way around.  Any call for analysis beyond this amounts to obfuscation and sleight of hand.  The concept of special employment simply does not apply to the facts of this case.

*Sookram*, No. 11006/2015, Order dated Nov. 8, 2017 at 9.[11]

The relevant facts in this case are undisputed.  HHC retained full authority to hire, discipline, pay and fire its housekeepers under a collective bargaining agreement to which Crothall was not a party.  It also provided supervisors, who along with Crothall managers during business days hours only, shared in the supervisory role over the large housekeeping department.  There simply was not the surrender by HHC that *Thompson* requires. As a matter of law, Crothall was not a special employer.

### 2.    Plaintiff did not detrimentally rely on Crothall's contractual duties at Elmhurst Hospital.

To establish "detrimental reliance on the defendant's continued performance of its contractual obligations" under the second *Espinal* exception, the plaintiff must "have knowledge of the contract" at issue.  *Doona*, 680 F. Supp. 2d at 402.  If the plaintiff has knowledge of the contract, then detrimental reliance is established only where the "performance of contractual obligations has induced" the plaintiff to rely "on continued performance" and the "defendant's

---

[11] The Supreme Court of New York in New York County, recently entered summary judgment in favor of Crothall on this same point relating to Crothall's housekeeping management services at Mt. Sinai Hospital, finding Crothall was not the special employer of Mt. Sinai's  housekeepers and did not owe a separate duty of care to a visitor who allegedly slipped on a wet floor. *See Fialkow v. Mt. Sinai Hospital and Crothall Healthcare, Inc.*, No. 162264/2014, Order dated May 14, 2018 at 3-6 (N.Y. Sup. Ct. May 14, 2018) ("Thus, although Crothall exercised some supervisory functions with respect to Mt. Sinai's housekeeping employees, Crothall established, prima facie, that Mt. Sinai did not relinquish control over them, as Mt. Sinai paid their wages, provided them with benefits, and had the final decisional authority to hire, discipline, or fine them.").

failure to perform those obligations positively or actively works an injury upon the plaintiff." *O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. 2005) (internal quotation marks omitted) (citing *Occhino v. Citigroup Inc.*, No. CV-03-5259 (CPS), 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005)). Additionally, the "nexus for a tort relationship between the defendant's contractual obligation and the injured non-contracting plaintiff's reliance and injury must be direct and demonstrable, not incidental or merely collateral." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 587, 634 N.E.2d 189 (1994).

In this case, Plaintiff was aware of Crothall, but she was not aware of the specifics of the contract between HHC and Crothall. [SOF at ¶¶ 20-21, 44]. As such, Plaintiff could not have detrimentally relied on the continued performance of Crothall's obligations at Elmhurst Hospital as a matter of law. The second *Espinal* exception does not apply.

### 3. Crothall did not entirely displace HHC or wholly absorb HHC's responsibility to maintain its premises in a safe manner.

The third *Espinal* exception requires Plaintiff to demonstrate that Crothall "entirely displaced" HHC's duty to maintain the premises safely. *Doona*, 680 F. Supp. 2d at 402-03. This requires proving that "the management contract between the defendant and the owner" was "a comprehensive and exclusive set of obligations which the parties could have reasonably expected to displace the owner's duty to maintain the premises safely." *Hagen v. Gilman Mgmt. Corp.*, 4 A.D.3d 330, 331, 770 N.Y.S. 2d 890 (2d Dep't 2004). A contractor cannot be liable under this exception if the premises owner "reserved for itself a significant amount of control over the maintenance of the premises." *Id.*

New York courts have repeatedly held that the provision of housekeeping-related services alone is insufficient to hold a contractor liable as the sole provider of a safe premise. *See Schmidt v. Promaster Cleaning Service*, 281 A.D.2d 468, 721 N.Y.S.2d 680 (2nd Dep't 2001) (contract

- 18 -

"was a limited undertaking for the performance of various cleaning services, and was not a comprehensive maintenance obligation that would create a duty to the injured plaintiff"). The third *Espinal* exception generally "requires more than just janitorial services" to show a contract was so "comprehensive and exclusive" that it entirely displaced the property owner with regard to the safety of the premises. *Doona*, 680 F.Supp.2d at 403.

*Doona* is instructive. There, OneSource contracted to provide the direct housekeeping services at an airplane hangar operated by American Airlines at John F. Kennedy Airport. *Id.* at 398. The plaintiff, an American Airlines employee, slipped and fell on a puddle of water in a bathroom. *Id.* He sued OneSource for negligence, alleging that the housekeeping company owed him a tort duty based on its breach of contract. *Id.* Applying *Espinal* and its progeny, the United States District Court for the Eastern District of New York (Chief Judge Irizarry) held that OneSource owed the plaintiff no such tort duty. *Id.* at 402-03. The court found no evidence that "OneSource either created (negligently or otherwise) the puddle of water on the floor, or exacerbated it in some way so as to render it more dangerous to the restroom patrons." *Id.* at 403. The court also rejected the notion that OneSource's janitorial contract was so comprehensive as to entirely displace and absorb the airline's duty to maintain its premises safely:

> Even if the premises are narrowed to just include the restrooms, American [Airlines] retained responsibility for the maintenance and repair of plumbing in the restrooms. As such, it cannot be said that the agreement was comprehensive or exclusive, or that OneSource, in providing janitorial services, wholly absorbed American's responsibility to safely maintain its premises.

*Id.*

Here, Crothall's contractual undertaking was far less involved than even OneSource's in *Doona* because Crothall did not even fully displace HHC's housekeeping function. [SOF at ¶¶ 9-13, 23-25, 33-38]. Crothall only undertook to provide limited housekeeping management services during business day hours at Elmhurst Hospital, services that did not include providing actual

housekeeping work, security services, maintenance, or preventative maintenance services. [SOF at ¶¶ 34-35].

Crothall worked with HHC to implement housekeeping services at Elmhurst, and those services were to conform to the hospital's policies and procedures, and at all times, Crothall's work was subject to the direction and control of HHC. [SOF at ¶ 9]. In addition to the Crothall managers, HHC provided its own housekeeping supervisors who oversaw and directed daily housekeeping activities and who *solely* oversaw housekeepers work during overnight and weekend shifts. [SOF at ¶¶ 23-24]. HHC retained the right and obligation to hire, fire, and discipline the hospital's housekeepers, and it even had the right to approve and remove Crothall's managers at its discretion. [SOF at ¶¶ 13-14].

In short, HHC retained significant control over the maintenance and safety of its premises. As noted above, the third *Espinal* exception can only apply if Crothall's contracted-for services were so comprehensive and exclusive such that Crothall entirely displaced HHC and wholly absorbed its duty to provide a safe premise. Crothall's limited agreement to provide housekeeping management services does not even come close to reaching that standard. *See Perkins*, 148 A.D.3d at 1191 (holding that Crothall, under the same contract and arrangement as here, did not entirely displace HHC's duty to maintain its hospital in a safe manner); *see also Collado*, 2017 WL 6502230, at *4 ("[G]iven the fact that Crothall did not provide security services or maintenance services, and did not entirely take over the housekeeping services, no reasonable juror could find that Crothall 'wholly absorbed' HHC's duty to maintain its premises safely."). As such, the third *Espinal* exception does not apply as a matter of law.

## IV.    CONCLUSION

Plaintiff suffered a work-related accident caused by the alleged negligence of her co-worker and recovered workers' compensation benefits. Regardless of special employment status,

- 20 -

it is indisputable that the housekeeper in question was an HHC general employee.  Thus, workers compensation benefits were Plaintiff's exclusive remedy, and she is barred from bringing a direct or derivative claim arising from that negligent act.  Moreover, the only premises duties Crothall owed with regard to Elmhurst were contractual duties owed to HHC.  Because none of the *Espinal* exceptions applies, Crothall did not owe a separate tort duty arising from its HHC contract that can support Plaintiff's claim of negligence against Crothall.  Crothall is entitled to judgment as a matter of law.

Dated: Uniondale, New York
  May 15, 2018

          Respectfully submitted,

          WESTERMAN BALL EDERER
          MILLER ZUCKER & SHARFSTEIN, LLP


          By:  /*s/*William E. Vita
            William E. Vita, Esq.
            1201 RXR Plaza
            Uniondale, NY 11556
            Telephone: 516-622-9200
            Facsimile: 516-622-9212
            wvita@westermanllp.com
            *Attorneys for Crothall Healthcare, Inc.*

01802326