UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAISY REYES,

                     Plaintiff,       Index No.: 1:17-cv-01003-KAM-VMS

      vs.

CROTHALL HEALTHCARE, INC.

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CROTHALL HEALTHCARE, INC.'S REPLY TO PLAINTIFF'S OPPOSITION**
**TO THEIR MOTION FOR SUMMARY JUDGMENT**

William E. Vita, Esq.
WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
(516) 662-9200
(516) 662-9212 fax
wvita@westermanllp.com

*Attorneys For Crothall Healthcare, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.    WORKERS' COMPENSATION BENEFITS ARE THE EXCLUSIVE REMEDY FOR INJURIES ARISING FROM PLAINTIFF'S CO-WORKER'S NEGLIGENCE .............. 2

II.   BECAUSE NO *ESPINAL* EXCEPTION APPLIES HERE, CROTHALL OWED NO DUTY UPON WHICH THIS TORT CLAIM CAN PROCEED ...................................... 5

A.  No *Espinal* Exception Applies ........................................................................... 5

1.    Crothall Personnel Did Not Launch the Force or Instrument of Harm....................... 5

2.    Crothall was not a Special Employer............................................................ 6

3.    Crothall did not entirely displace HHC regarding the safety of its premises. .......... 11

IV.  CONCLUSION................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Collado v. Crothall Healthcare Inc.,* No. 17-CV-3078 (KBF), 2017 WL 6502230
(S.D.N.Y. Dec. 15, 2017) ...................................................................................................14

*Doona v. OneSource Holdings, Inc.,* 680 F. Supp. 2d 394 (E.D.N.Y. 2010) ...............................16

*Isabella v. Koubek*, 733 F.3d 384 (2d Cir. 2013) (certifying the issue to the New
York Court of Appeals) .......................................................................................................7

*Mraz v. JP Morgan Chase Bank*, No. 17-CV-6380, 2018 WL 2075427 (E.D.N.Y.
May 3, 2018) ........................................................................................................................9

*Santorelli v. Crothall Services Group*, No. 15-cv-978, 2017 WL 728227
(E.D.N.Y. 2017) .................................................................................................................14

**STATE CASES**

*Braxton v. Mendelson*, 233 N.Y. 122, 135 N.E. 198 (1922).........................................................15

*Church ex rel. Smith v. Callanan Indus., Inc.,* 99 N.Y.2d 104, 782 N.E.2d 50
(2002) .................................................................................................................................17

*Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 773 N.E.2d 485
(2002) ..............................................................................................................................9, 16

*Isabella v. Hallock*, 22 N.Y.3d 788, 10 N.E.3d 673 (2014) ...........................................................7

*Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 416 N.E.2d 557 (1980) .........................................8

*Lotz v. Aramark Services, Inc.*, 98 A.D. 3d 603 (2d Dep't 2012).................................................14

*Naso v Lafata*, 4 N.Y.2d 585, 152 N.E.2d 59 (1958) .....................................................................7

*Pereira v. St. Joseph's Cemetery*, 54 A.D.3d 835, 864 N.Y.S.2d 491 (2d Dep't
2008) .....................................................................................................................................8

*Perkins v. Crothall Healthcare, Inc.,* 148 A.D.3d 1189, 51 N.Y.S.3d 118 (2d
Dep't 2017) ....................................................................................................................11, 17

*Rauch v Jones*, 4 N.Y.2d 592 152 N.E.2d 63 (1958)......................................................................7

*Roberts v. Gagnon*, 1 A.D.2d 297, 149 N.Y.S.2d 743 (3d Dep't 1956).........................................7

*Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 585 N.E.2d 355 (1991).........10, 12, 15

In its Motion for Summary Judgment, Crothall met its burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law on two separate grounds: (1) Plaintiff is barred by the exclusivity provision of the Workers' Compensation Law from maintaining suit arising from the negligence of her co-worker and (2) Crothall's contract-based duties do not support Plaintiff's negligence claim here because no *Espinal* exception applies.

In her Opposition, Plaintiff ignores the first ground altogether, simply concluding in a footnote that Crothall's first argument "is not germane."  But the reason Plaintiff does not attempt to raise a genuine issue of material fact and meet the burden that shifted to her is because she cannot.  There are only three essential facts necessary for the Workers' Compensation Law to bar Plaintiff's entire lawsuit here, and she has no choice but to admit them all: Plaintiff was injured in the course and scope of her employment, the accident/injure arose from the negligence of a co-worker, and Plaintiff recovered workers' compensation benefits.  This point alone is dispositive in this case.

To the extent this Court chooses to address the no-duty *Espinal* ground, Crothall prevails there as well.  Plaintiff goes to great lengths in her Opposition to discuss Crothall's control over HHC's housekeepers, but Plaintiff almost entirely ignores the extent to which HHC and its personnel also exercised control over them.  In addition to control by Crothall, Plaintiff must also rebut the legal presumption of exclusive general employment through a "clear demonstration of surrender of control" by HHC over the housekeeper in question.  The now-undisputed facts demonstrate that HHC made no such surrender.  Even giving Plaintiff every benefit of doubt, the best she can ever prove is that HHC retained and *shared* with Crothall control over the HHC-

employed housekeepers.  But without total surrender by HHC, her argument fails as a matter of law.

Finally, Plaintiff argues in passing that Crothall—through its five managers who along with eight or nine HHC supervisors co-managed a very large HHC housekeeping team at a very large hospital—somehow completely displaced HHC of it duty to provide a safe premises at the hospital.  Her arguments have no merit whatsoever.  Crothall is entitled to judgment as a matter of law.

## I.    WORKERS' COMPENSATION BENEFITS ARE THE EXCLUSIVE REMEDY FOR INJURIES ARISING FROM PLAINTIFF'S CO-WORKER'S NEGLIGENCE

New York Workers' Compensation Law § 29(6) provides in no uncertain terms that workers' compensation benefits shall be the exclusive remedy to an employee when such employee is injured by the negligence another in the same employ.  This statutory bar prevents the injured worker from bringing a direct action against her negligent co-worker or any derivative action against a third party arising from that co-worker's negligence.   The Second Circuit Court of Appeals and the New York Court of Appeals recently addressed the latter issue of whether a third party can be derivatively liable for the negligence of a plaintiff's co-worker in the workers compensation context.  *Isabella v. Koubek*, 733 F.3d 384, 388, (2d Cir. 2013) (certifying the issue to the New York Court of Appeals); *Isabella v. Hallock*, 22 N.Y.3d 788, 792-793, 10 N.E.3d 673, 674-675 (2014) (responding to the Second Circuit). And the New York Court of Appeals answered definitively *no*, that the exclusive remedy of workers' compensation benefits is an intentional, complete bar to claims arising from a co-worker's negligence, including derivative claims arising therefrom.  *Isabella*, 22 N.Y.3d at 794 ("[T]he statute, having deprived the injured employee of a right to maintain an action against a negligent coemployee,

-2-

bars a derivative action which necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided."); *see also Rauch v Jones*, 4 N.Y.2d 592, 596 152 N.E.2d 63 (1958) (barring third-party derivative claim that "necessarily is dependent upon the same claim of negligence for which the exclusive remedy has been provided."); *Naso v Lafata*, 4 N.Y.2d 585, 591, 152 N.E.2d 59 (1958) (same); *Roberts v. Gagnon*, 1 A.D.2d 297, 149 N.Y.S.2d 743 (3d Dep't 1956) (dismissing common law respondeat superior claim against the principal of the plaintiff's negligent co-worker, while noting that Workers' Comp. Law § 29(6) "makes one and only one remedy available to an employee injured in the course of his employment by a fellow worker—namely, workmen's compensation" and that "no common-law action is permitted whether such action be directed against a negligent co-employee *or his principal*") (emphasis added).

Plaintiff here does not dispute that her injury arose from the negligence of the unidentified HHC housekeeper. She admits that her accident occurred in the course and scope of her employment. (Response to Undisputed Statement of Facts "RSOF" 1, 6). She admits that she recovered workers' compensation benefits because of the accident. (RSOF6). And she admits that the wet floor created by her HHC co-worker was the cause of her accident. (RSOF 2, 3). Instead of addressing head-on the fatal blow § 29(6) of the Workers' Compensation Law deals to her entire lawsuit, Plaintiff merely notes in a footnote that she believes this argument not be "germane," clearly hoping that the Court will only address the second argument below. Of course, Rule 56 requires much more than that to prevent summary judgment.

Regardless, the facts are undisputed, and the law is clear and one-sided. Plaintiff obviously cannot sue her negligent co-worker directly, even if she could identify him. But it also means she cannot bring a derivative action against the co-worker's employer (HHC) or any other

-3-

ostensible principal, including Crothall.  For this reason alone, Crothall is entitled to judgment as a matter of law.

It is also important to note that Plaintiff's negligent co-worker enjoys workers compensation immunity; thus, he has no liability to impute to a principal.  Respondeat superior liability is a common-law doctrine that "merely provides a theoretical means for transferring the liability of an employee to his employer and imposing upon the latter financial responsibility for the legally cognizable culpable conduct of the former."  But without primary or underlying liability on the agent, there is no vicarious liability to impute to the principal.  *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 546, 416 N.E.2d 557, 564 (1980) (emphasis original) (granting summary judgment for Newsday on a respondeat superior claim based on the negligence of three reporters who enjoyed qualified privilege, while ruling that "there can be no vicarious liability on the part of the employer if the employee himself is not liable"); *Pereira v. St. Joseph's Cemetery*, 54 A.D.3d 835, 837, 864 N.Y.S.2d 491 (2d Dep't 2008) (granting landowner's motion to dismiss a vicarious liability claim based on the tortious conduct of the employer who enjoyed workers compensation immunity and holding that a "claim of vicarious liability cannot stand when 'there is no primary liability upon which such a claim of vicarious liability might rest'") (quoting *Karaduman*); *Mraz v. JP Morgan Chase Bank*, No. 17-CV-6380, 2018 WL 2075427, at *7 (E.D.N.Y. May 3, 2018) (denying motion to remand while noting that the plaintiffs' attempt to join J.P. Morgan Securities and hold it vicariously liable for the torts of individual defendants who bore no liability must fail because a "claim of vicarious liability cannot stand when 'there is no primary liability upon which such a claim of vicarious liability might rest.'") (quoting *Pereira* and *Karaduman*).

-4-

Here, Plaintiff's co-worker may have been negligent and responsible for her accident, but he bears no liability. Just like the employer in *Pereira*, Plaintiff's co-worker enjoys workers compensation exclusivity immunity. According to New York's highest court, which was recently adopted and applied by this Court, there is no liability to impute to Crothall here. For this separate but related ground, Crothall is entitled to summary judgment.

## II.    BECAUSE NO *ESPINAL* EXCEPTION APPLIES HERE, CROTHALL OWED NO DUTY UPON WHICH THIS TORT CLAIM CAN PROCEED

New York courts have long held that contractual duties (even if breached) do not give rise to a tort duty or liability to additional parties, absent an applicable *Espinal* exception. *Espinal v. Melville Snow Contractors*, *Inc.*, 98 N.Y.2d 136, 142, 773 N.E.2d 485, 48 (2002). It is undisputed in this case that Crothall was a contractor at Elmhurst (not a property owner or lessee) and, therefore, absent an applicable *Espinal* exception, there is no duty upon which Plaintiff may base her negligence claim against Crothall arising from Crothall's contractual obligations. Plaintiff does not dispute this basic premise.

### A.  No *Espinal* Exception Applies

In Plaintiff's Opposition, she argues that the first and third *Espinal* exceptions should apply in this case. Because Plaintiff concedes the second *Espinal* exception does not apply, Crothall will not discuss that exception further.

#### 1.   Crothall Personnel Did Not Launch the Force or Instrument of Harm.

It is undisputed that the uniformed housekeepers at Elmhurst, like the one Plaintiff allegedly saw preparing to mop the hallway, were HHC's uniformed and unionized housekeepers, not one of Crothall's five managers. There is no evidence to suggest that a Crothall manager was the person Plaintiff saw wearing a housekeeping uniform and preparing to mop the floor. Therefore, the *only* basis for Plaintiff's argument that Crothall "launched a force

or instrument of harm" under the first *Espinal* exception rests upon her contention that HHC's

housekeepers (*i.e.*, HHC's general employees) were *also* Crothall's *special* employees, which

would make Crothall vicariously liable for the housekeeper's alleged negligence.[1]

### 2. Crothall was not a Special Employer.

The *presumption* under New York law is that general employment continues exclusively

absent "a clear demonstration of surrender of control by the general employer and assumption of

control by the special employer." *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557,

585 N.E.2d 355 (1991). In *Thompson*, the Court of Appeals of New York found special

employment was only established when the special employer had "comprehensive and exclusive

daily control over and direction of the special employee's work for almost a full year with the

corresponding absence of any supervision or control of his work duties by the originating

employer." *Id*. at 557.

There is a very compelling reason for the presumption of general employment-only and

the requisite showing of surrender and the assumption of exclusive control: where special

employment is established, the special employer assumes full liability for the employee's

actions, and the general employer is absolved of all such vicarious liability. *Perkins v. Crothall*

*Healthcare, Inc.,* 148 A.D.3d 1189, 1190, 51 N.Y.S.3d 118 (2d Dep't 2017) ("The special

servant rule applies only where the usual employer relinquishes control of the servant to another

person, thereby making the servant a special employee of the other person and making that

person, rather than the usual employer, liable for the servant's acts.") (citing *Reintiz v Arc Elec.*

*Constr. Co.*, 483 N.Y.S.2d 821, 823, 104 A.D.2d 247, 250 (3d Dep't 1984)).  Thus, without total

---

[1] As discussed above, even if Crothall were held to be a special employer, Plaintiff is still barred from bringing a derivative claim based on the negligence of a co-worker, and Crothall still cannot be vicariously liable for the negligence of an immune tortfeasor with no liability to impute.

surrender by the general employer and assumption of *exclusive* control by the other, the presumption of continued general employment-only is not overcome.  Here, HHC's housekeepers remained at HHC's facilities, continued doing the work of HHC, and remained under the supervision and direction of HHC and its personnel.  At no point did HHC surrender and Crothall assume comprehensive and exclusive control over HHC's personnel.

In Plaintiff's Opposition, she goes to great lengths to discuss Crothall's involvement in HHC's housekeeping efforts at Elmhurst.  And many of her points are valid—Crothall did participate in the training, management and operation of a very large housekeeping effort.  But what Plaintiff wholly fails to do is refute the now-undisputed fact that HHC *also* actively participated in the operation and management of the housekeeping effort and, thus, never relinquished or surrendered control over its unionized housekeeping staff.  Plaintiff almost entirely ignores the extent to which HHC continued to exercise control over HHC's housekeepers.  Although Plaintiff relies on *Thompson* to support the existence of a special employment relationship, the facts in this case are nearly polar opposite of *Thompson*.  In *Thompson,* the special employer, Grumman, selected the special employee (Thompson); it interviewed him; it fixed Thompson's wages and benefits; it assigned Thompson to work at one of Grumman's facilities; it *exclusively* oversaw all of Thompson's work to the exclusion of Thompson's general employer (who had *no* personnel onsite at Grumman's facility and had no knowledge or expertise about the work Thompson performed for Grumman); and it had the exclusive right to terminate Thompson's assignment.  78 N.Y.2d at 555.  Thompson's general employer transferred and *totally surrendered* control over him, and Grumman assumed *exclusive* control over Thompson's work. *Id.* at 558-59. Here, the undisputed facts demonstrate the opposite.

Far from "comprehensive and exclusive" control by Crothall with the corresponding "absence of any supervision or control" by HHC, the undisputed evidence in this case is that there were eight or nine separate HHC housekeeping supervisors at Elmhurst who *also* oversaw the work of HHC's housekeepers during the same shifts as Crothall five mangers.  During weekend and overnight shifts, the housekeeping work was overseen *only* by HHC housekeeping supervisors.  It is also undisputed that additional HHC personnel at Elmhurst (such as doctors, nurses, or security guards) could *also* direct HHC's housekeeper's to attend to housekeeping needs throughout the day, such as spills, and could do so without contacting Crothall.[2]  This is in addition to the undisputed facts that HHC retained the power to hire, discipline, pay, and fire the housekeepers, and that all work under the Contract was at all times subject the direction and control of HHC and in accordance with the policies and procedures of HHC.[3]  In regard to staffing plans, work flows, employment conditions, or changes to the scope of work, HHC did

---

[2] Crothall frequently references spill clean ups in its motion papers because it is uncontested that general scheduled mopping in the hallway where Plaintiff fell usually took place in the early morning hours, long before this accident, and therefore, mopping in the hallway around the time of this accident would have been in response to some specific request or need, which was not reported to Crothall at the time.

[3]  A large amount of Plaintiff's response consists of Plaintiff's argument that Crothall's corporate SOP manual should be accepted as a substitute or surrogate for the actual contractual terms between HHC and Crothall or the uncontroverted testimony of witnesses.  To be clear, the HHC Contract makes no mention of Crothall's SOP documents and does not incorporate them into the Contract.  To the contrary, HHC specifically states that *HHC's* policies and procedures will govern Crothall's work under the Contract and all witness confirmed the same.  Plaintiff's suggestion that Crothall's corporate SOP should nonetheless be treated as the controlling document (despite being inapplicable on its face as to date and, often, subject matter) is not reasonable.  Even if the Court were to overlook the lack of proper foundation for Plaintiff's use of the SOP, to the extent Plaintiff's use of it contradicts the actual Contract and witness testimony, it should be disregarded as speculation and conjecture on the part of Plaintiff.

not "surrender control" to Crothall but rather HHC retained the authority to control such decisions.[4]

Further, unlike *Thompson* where the plaintiff worked exclusively at Grumman's facility performing only Grumman's work for Grumman's customers, the housekeepers here remained at the general employer's (HHC) facility and performed work for HHC.  And unlike *Thompson*, where the general employer maintained zero presence at the workplace and had no specialized knowledge of the work being performed, the general employer here (HHC) maintained an overwhelming presence at the workplace, employed the entire housekeeping staff, co-managed the housekeeping operation, and could easily continue to operate its own housekeeping function even if HHC exercised its discretion to remove all five Crothall managers from Elmhurst tomorrow.  The undisputed facts here are virtually nothing like those in *Thompson.*

Finally, Plaintiff does not even address the fact that HHC's housekeepers are unionized. As a practical matter, Crothall simply cannot assume exclusive control over an entire housekeeping staff subject to a collective bargaining agreement to which Crothall is not a party. Plaintiff also does not address how it can be said that HHC surrendered and relinquished complete control over employees covered by a collective bargaining agreement to which HHC *is* a party.  The only additional citations Plaintiff provides on special employment are to *Santorelli v. Crothall Services Group*, No. 15-cv-978, 2017 WL 728227 (E.D.N.Y. 2017), and *Lotz v. Aramark Services, Inc.*, 98 A.D. 3d 603 (2d Dep't 2012).  Those cases are distinguishable.  First,

---

[4]  It appears Plaintiff's only response to the undisputed evidence that HHC retained such control under its Contract was to suggest that HHC would likely accept Crothall recommendations anyway.  Plaintiff cites to no evidence to support this contention, and regardless, the pertinent point is that HHC retained control over such decision making and over the work to be performed pursuant to such decisions.  Presumably HHC can accept recommendations from various sources as to how to improve services at its facilities (in additional to Crothall), but such does not mean HHC has surrendered its control over those decisions.

the *Lotz* decision summarily concluded that there were issues of material fact about special employment, without discussion of the contract or the arrangement between the contracting parties.[5] It is difficult to find the Second Department intended for the *Lotz* opinion to be guiding precedent as to the facts or analysis when it did not include such in the opinion. Second, *Santorelli* involved a small, non-HHC facility where two Crothall managers unilaterally managed a handful of hospital housekeepers without any hospital supervision. *See Santorelli*, 2017 WL 728227, at \*7 (noting that "no Eger employee managed Ortega [housekeeper]; rather he was responsible only to Crothall employees"). The evidence in this case is, again, the complete opposite.

The *only* testimony in this case is that HHC housekeepers at Elmhurst also took direction from HHC personnel. And the court in *Collado v. Crothall Healthcare Inc.,* No. 17-CV-3078 (KBF), 2017 WL 6502230, at \*4 (S.D.N.Y. Dec. 15, 2017) distinguished *Santorelli* on this very ground. In *Collado*, like here and totally unlike in *Santorelli*, the identified housekeeper regularly reported to and was supervised by Crothall *and* HHC personnel. *Id*. at \*4 ("Ortiz was employed by, paid by, hired by, and supervised by HHC personnel. That there was another layer of supervision involving Crothall personnel is of note, but does not establish a material issue of fact as to whether HHC clearly demonstrated the surrender *Thompson* requires.").[6]

---

[5] In *Santorelli*, Judge Gershon referred to the appellate briefs of the parties in an attempt to discern a basis for the *Lotz* court's opinion. Crothall contends, however, that *Lotz* is of zero import here, as it clearly involved different parties than here, a different facility, and a different contract.

Moreover, the Plaintiff-Respondent's brief in *Lotz*, clearly sets out the evidence that the special employer's director testified that the hospital's housekeepers were under the "exclusive" supervision of special employer *only*, and that no one from the hospital directed the housekeepers) *Lotz*, Docket No. 2011-06913, Appellate Division – Second Department, Brief For Plaintiff-Respondent, page 6.

[6] Crothall notes that the *Collado* and *Santorelli* opinions also were distinguished on the point of evidence showing Crothall could recommend termination of a housekeeper to the general employer. Respectfully, Crothall suggests the ability to make recommendations is inapposite

-10-

Although important, control is but one of several factors may be in play in analyzing the special employment issue.  A worker is a special employee only when he has been "transferred for a limited time of whatever duration to the service of another."  *Thompson*, 78 N.Y.2d at 557 (emphasis added).  The ultimate question remains: "In whose business was the servant engaged at the time?" *Braxton v. Mendelson*, 233 N.Y. 122, 124, 135 N.E. 198, 198 (1922) (cited by *Thompson* in factor discussion).

Here, there simply was no transfer.  HHC unilaterally hired and retained the sole authority to fire its housekeeping staff, subject to a collective bargaining agreement solely between HHC and the housekeepers' union.  That housekeeping staff did not travel to Crothall's place of business to perform work for Crothall.  Instead, they all worked exclusively at HHC's facility, cleaning HHC's property for the sole benefit of HHC's patients, employees and visitors.  HHC also brought in Crothall's five managers to assist with *HHC's* housekeeping work.  In light of the undisputed facts surrounding this arrangement, the suggestion that HHC transferred its large, unionized housekeeping staff over to Crothall to assist with Crothall's business borders on the absurd.  This is not a special employment situation.  Crothall is entitled to judgment as a matter of law.

> **3.    Crothall did not entirely displace HHC regarding the safety of its premises.**

---

in light of uncontroverted evidence that HHC retained the absolute authority to control the employment terms, including termination, of its employees, which were subject to a separate, prior collective bargaining agreement between HHC and the housekeepers' union.  Presumably, several sources could make recommendations to HHC regarding operation of its facilities, but the authority to accept/not accept recommendations and make related decisions was wielded exclusively by HHC and was not "surrendered" to Crothall.

The third *Espinal* exception applies when a contractor "entirely displaces" the property owner with regard to the safety of the premises. And entire displacement means just that. It only arises when the agreement in question is *comprehensive* and *exclusive*. *Palka vs. Servicemaster Management Servs. Corp.*, 83 N.Y.2d 579, 588, 634 N.E.2d 189, 194 (1994). In the seminal case on the subject, *Palka*, the New York Court of Appeals only found total displacement where the contract in question was truly exclusive and all-encompassing:

> Plainly, its extensive privatization arrangement displaced entirely the hospital's prior in-house maintenance program and substituted an exclusive responsibility in Servicemaster to perform all of Ellis Hospital's pertinent nonmedical, preventative, safety inspection and repair service functions.

*Id*. at 584.

It is also important to note that, like special employment, a finding of complete displacement imposes full premises liability on the contractor and absolves the landowner entirely. The standard for the third *Espinal* exception is justifiably high, and it should come as no surprise that total displacement "requires more than just janitorial services." *Doona v. OneSource Holdings, Inc.,* 680 F. Supp. 2d 394, 403 (E.D.N.Y. 2010) (citing *Palka*).

Here, Plaintiff argues this *Espinal* exception applies and again cites to *Santorelli* in support of that position. Again, *Santorelli* involved a different contract, set of contractual responsibilities and a very small facility where, by comparison, Crothall's management presence was exclusive and far greater proportion (two full-time managers overseeing eight hospital housekeepers) than at Elmhurst. By contrast, in *Perkins v. Crothall Healthcare, Inc.,* analyzing the very same contract at issue here, the Second Department determined that the contracted-for "housekeeping management services" did not entirely and completely displace HHC's duty to maintain the hospital "in a safe manner." 148 A.D.3d at 1191.

Here, Crothall provided housekeeping management services but, as discussed above, the property owner, HHC, *also* retained control over the housekeeping services, including the direction of housekeepers by HHC and its personnel.  Unlike the defendant-contractor in *Palka*, Crothall did not provide any inspection, maintenance or repair services.  And unlike the defendant-contractor in *Doona*, Crothall did not even provide actual housekeeping services—it only shared with HHC certain training and management obligations over HHC's unionized housekeeping staff.  If Crothall's limited presence (five managers) at Elmhurst is sufficient to find that Crothall entirely displaced HHC's duty to maintain the hospital premises, thereby absolving HHC of all premises liability and transferring such liability to Crothall, then the third *Espinal* exception would swallow the general rule, as specifically warned of by the Court of Appeals of New York in *Church ex rel. Smith v. Callanan Indus., Inc.,* 99 N.Y.2d 104, 112, 782 N.E.2d 50, 54 (2002) ("tort liability for breach of contract will not be imposed merely because there is some safety-related aspect to the unfulfilled contractual obligation. If liability invariably follows nonperformance of some safety-related aspect of a contract, the exception would swallow up the general rule against recovery in tort based merely upon the failure to act as promised.").

## IV.   **CONCLUSION**

Plaintiff suffered a work-related accident caused by the alleged negligence of her co-worker and recovered workers' compensation benefits.  Regardless of special employment status, it is indisputable that the housekeeper in question was an HHC general employee.  Thus, workers compensation benefits were Plaintiff's exclusive remedy, and she is barred from bringing a direct or derivative claim arising from that negligent act.  Moreover, Crothall was a contractor owing contractual duties to HHC.  Because none of the *Espinal* exceptions applies, Crothall did not owe

a separate tort duty arising from its HHC contract that can support Plaintiff's claim of negligence

against Crothall.  Crothall is entitled to judgment as a matter of law

Dated:  Uniondale, New York
       June 12, 2018

                              Respectfully submitted,


                              By:  */s/*William E. Vita
                                  William E. Vita, Esq.
                                  WESTERMAN BALL EDERER
                                  MILLER ZUCKER & SHARFSTEIN, LLP
                                  1201 RXR Plaza
                                  Uniondale, NY 11556
                                  Telephone:  516-622-9200
                                  Facsimile:  516-622-9212
                                  wvita@westermanllp.com

-14-